**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BAYER PRODUCTION SUPPLY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:25-cv-1199 |
| | ) | |
| WADE SCHMIDGALL, | ) | |
| LEE SCHMIDGALL, AND | ) | |
| NATHAN SCHMIDGALL, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF BAYER PRODUCTION SUPPLY LLC'S COMPLAINT**
**FOR BREACH OF CONTRACT, SPECIFIC PERFORMANCE, UNJUST**
**ENRICHMENT, CONVERSION, REPLEVIN AND INJUNCTIVE RELIEF**

**COMES NOW**, Plaintiff Bayer Production Supply LLC ("Bayer Production"), by and through the undersigned counsel and hereby submits its Complaint for Breach of Contract, Specific Performance, Unjust Enrichment, Conversion, and Replevin.

Plaintiff contracted with the defendants, as independent contractors, to produce seed. Pursuant to the Parties' agreements, Plaintiff provided Defendants "parent seed," which is seed specifically grown to produce a new generation of seed, so that Defendants can grow seed to be available for Plaintiff or its affiliates to sell to growers in future growing seasons. Defendants received and planted Plaintiff's parent seed but have failed to abide by the Parties' contractual obligations, which require Defendants to, at the election of Plaintiff, make such seed available to Plaintiff so that Plaintiff or its affiliates can (a) use such seed or sell such seed to growers, or (b) direct that such seed be delivered to an elevator for non-seed (commodity) purposes.

I.    INTRODUCTION

1.    Plaintiff Bayer Production Supply LLC ("Bayer Production") brings this action

against Defendants Wade Schmidgall ("Wade"), Lee Schmidgall ("Lee"), and Nathan Schmidgall ("Nathan") (collectively, "Defendants") due to Defendants' numerous breaches of the Parties' Parent Soybean Seed Grower Agreements ("Production Agreements"), conversion of Plaintiff's property, unjust enrichment and replevin.

2.     Bayer Production is in the business of developing and producing varieties of soybean seeds that contain patented biotechnologies.

3.     To produce sufficient quantities of particular patented soybean seed varieties for sale to the public, Bayer Production enters into seed production contracts with growers who plant "parent seed" of those varieties. The resulting crop from the parent seed yields soybean seed that is processed, bagged, and labeled for sale.

4.     In 2023, Bayer Production and defendants Wade Schmidgall and Lee Schmidgall entered seed production agreements under which Bayer Production provided such defendants with "parent seed" and such defendants agreed to provide farming services related to the seed. Pursuant to the agreements, Bayer Production retained ownership of the parent seed and any resulting crop production, also referred to as "produced seed." Defendants Wade Schmidgall and Lee Schmidgall were required, if Bayer Production elected that the produced seed from the 2023 growing season be used for non-seed purposes, to deliver the produced seed to an elevator for Bayer Production's account such that Bayer Production would receive payment for the crop production/produced seed. After Bayer Production met its production and marketing needs, Bayer Production made its election under the production agreements that the produced seed grown by defendants Wade and Lee Schmidgall from the 2023 growing season was "released," and therefore would be used for a non-seed purpose and delivered to an elevator. Defendants Wade and Lee Schmidgall breached their obligations under the production agreement for the 2023 growing season following such

election by Bayer Production, upon information and belief, by among other breaches, selling or otherwise transferring the 2023 crop and keeping the sale/transfer proceeds and/or otherwise benefiting from the sale/transfer proceeds, which belong to Bayer Production, the owner of the produced seed.

5.     Similarly, in 2024, Plaintiff Bayer Production entered seed production agreements with all three defendants under which Plaintiff provided Defendants with "parent seed" and Defendants agreed to provide farming services related to the parent seed. Pursuant to the agreements, Plaintiff retained ownership of the parent seed and any resulting produced seed. Defendants Wade Schmidgall, Nathan Schmidgall and Lee Schmidgall agreed and were required, if Plaintiff elected, to deliver the crop production/produced seed to an elevator for Plaintiff's account such that Plaintiff would receive payment for the crop production/produced seed. Defendants breached their obligations under the production agreement for the 2024 growing season following such election by Plaintiff, upon information and belief, by among other breaches, selling or otherwise transferring the 2024 crop and keeping the sale/transfer proceeds and/or otherwise benefiting from the sale/transfer proceeds, which belong to Plaintiff.

6.     To date, neither the produced seed from the 2023 growing season nor from the 2024 growing season has been provided to Plaintiff or for Plaintiff's benefit.

7.     Despite repeated oral and written demands, Defendants have failed to provide Plaintiff the information about the parent seed and resulting produced seed that Defendants are contractually obligated to provide, for both the 2023 and 2024 growing seasons. Plaintiff has been damaged in the amount of no less than $855,358.10, plus costs, fees, and interest.

## II.     THE PARTIES

**Plaintiff**

8.      Plaintiff is Bayer Production Supply LLC, a limited liability company organized under Delaware law with its principal place of business in St. Louis, Missouri. Plaintiff is a citizen of Delaware, Missouri, New Jersey, Indiana, and foreign states by virtue of the citizenship of its member and the citizenship of its members' members.

**Defendants**

9.      Defendant Wade Schmidgall is a natural person. Based on information and belief, Wade is a citizen of and resides in Mackinaw, IL.

10.     Defendant Wade Schmidgall may be served at 32597 Hay Road, Mackinaw, Illinois, 61755, or wherever he may be found.

11.     Defendant Lee Schmidgall is a natural person. Based on information and belief, Lee is a citizen of and resides in Mackinaw, IL.

12.     Defendant Lee Schmidgall may be served at 32597 Hay Road, Mackinaw, Illinois, 61755, or wherever she may be found.

13.     Defendants Wade Schmidgall and Lee Schmidgall are husband and wife.

14.     Defendant Nathan Schmidgall is a natural person. Based on information and belief, Nathan is a citizen of and resides in Mackinaw, IL.

15.     Defendant Nathan Schmidgall may be served at 11118 Keyser Road, Mackinaw, Illinois, 61755, or wherever he may be found.

16.     Defendant Nathan Schmidgall is the son of Defendant Wade Schmidgall.

## III.     JURISDICTION

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332 because there is complete diversity between Plaintiff Bayer Production and Defendants and the amount in controversy exceeds $75,000.00 per Defendant.

18.    The Parties in this action agreed to personal jurisdiction in the Eastern District of Missouri, Eastern Division, and have designated this judicial district and division as the exclusive forum and venue for all disputes arising under the Agreements executed by Defendants. See e.g., Production Agreements, Exs. 1 through 9, Terms and Conditions, Para. 22.

19.    True and accurate redacted copies of the Production Agreements executed by Defendants are attached hereto as Exhibits 1 through 9, incorporated herein by this reference.

20.    Paragraph 22 of the Terms and Conditions of the Parties' Agreements, captioned "Governing Law, Jurisdiction, Venue," provides as follows:

> The laws of the state of Missouri shall govern this Agreement and the Parties' seed growing relationship. The Parties consent to the **exclusive** jurisdiction and venue of the U.S. District Court for the Eastern District of Missouri, Eastern Division, and the Circuit Court of the County of St. Louis, State of Missouri, for all disputes arising out of this Agreement.

Production Agreements, Exs. 1 through 9, Terms and Conditions, ¶ 22 (emphasis added).

21.    This Court has personal jurisdiction over Defendants and venue is proper.

## IV.    PARENT SOYBEAN GROWER PRODUCTION AGREEMENTS

22.    Plaintiff is a researcher, producer, and seller of agricultural seed, including soybean seed. See e.g., Production Agreements, Exs. 1 through 9, p. 2 (preamble above "INDEX").

23.    Defendants are growers engaged in farming who contracted with Plaintiff as independent contractors to perform services by growing soybean seed for Plaintiff using parent seed provided by Plaintiff. Id.

24.    The claims brought by Plaintiff arise out of and relate to numerous Parent Soybean Seed Grower Agreements between Plaintiff and Defendants.

**Contract 4600017801 (Production "Agreement 01") (Exhibit 1)**

25.     On or about March 13, 2023, Plaintiff and Defendant Wade Schmidgall entered into a 2023 Bayer Parent Soybean Seed Grower Agreement known as contract 4600017801 ("Agreement 01"). See Exhibit 1.

26.     A true and correct redacted copy of Agreement 01 is attached as **Exhibit 1** and is incorporated herein by this reference.[1] Id.

27.     Plaintiff and Defendant Wade Schmidgall entered Agreement 01.

**Contract 4600017802 (Production "Agreement 02") (Exhibit 2)**

28.     On or about March 13, 2023, Plaintiff and Defendant Wade Schmidgall entered into a 2023 Bayer Parent Soybean Seed Grower Agreement known as contract 4600017802 ("Agreement 02"). See Exhibit 2.

29.     A true and correct redacted copy of Agreement 02 is attached as **Exhibit 2** and is incorporated herein by this reference. Id.

30.      Plaintiff and Defendant Wade Schmidgall entered Agreement 02.

**Contract 4600018588 (Production "Agreement 88") (Exhibit 3)**

31.     On or about April 3, 2023, Plaintiff, on the one hand, and Defendants Wade Schmidgall and Lee Schmidgall on the other, entered into a 2023 Bayer Parent Soybean Seed Grower Agreement known as contract 4600018588 ("Agreement 88").

32.     A true and correct redacted copy of Agreement 88 is attached as **Exhibit 3** and is incorporated herein by this reference. See Exhibit 3.

33.     Plaintiff and Defendants Wade and Lee Schmidgall entered Agreement 88.

---

[1] Redactions have been made by blacking out proprietary and/or sensitive information.

**Contract 4600026742 (Production "Agreement 42") (Exhibit 4)**

34.     On or about April 17, 2024, Plaintiff, on the one hand, and Defendants Wade Schmidgall, Lee Schmidgall, and Nathan Schmidgall, on the other, entered into a 2024 Bayer Parent Soybean Seed Grower Agreement known as contract 4600026742 ("Agreement 42").

35.     A true and correct redacted copy of Agreement 42 is attached as **Exhibit 4** and is incorporated herein by this reference. See Exhibit 4.

36.     Plaintiff and Defendants Wade, Lee, and Nathan Schmidgall entered Agreement 42.

**Contract 4600026743 (Production "Agreement 43") (Exhibit 5)**

37.     On or about April 17, 2024, Plaintiff, on the one hand, and Wade Schmidgall, Lee Schmidgall, and Nathan Schmidgall, on the other, entered into a 2024 Bayer Parent Soybean Seed Grower Agreement known as contract 4600026743 ("Agreement 43").

38.     A true and correct redacted copy of Agreement 43 is attached as **Exhibit 5** and is incorporated herein by this reference. See Exhibit 5.

39.     Plaintiff and Defendants Wade, Lee, and Nathan Schmidgall entered Agreement 43.

**Contract 4600026744 (Production "Agreement 44") (Exhibit 6)**

40.     On or about April 17, 2024, Plaintiff, on the one hand, and Defendants Wade Schmidgall, Lee Schmidgall, and Nathan Schmidgall, on the other, entered into a 2024 Bayer Parent Soybean Seed Grower Agreement known as contract 4600026744 ("Agreement 44").

41.     A true and correct redacted copy of Agreement 44 is attached as Exhibit 6 and is incorporated herein by this reference. See Exhibit 6.

42.     Plaintiff and Defendants Wade, Lee, and Nathan Schmidgall entered Agreement 44.

**Contract 4600026745 (Production "Agreement 45") (Exhibit 7)**

43.     On or about April 17, 2024, Plaintiff, on the one hand, and Wade Schmidgall, Lee Schmidgall, and Nathan Schmidgall, on the other, entered into a 2024 Bayer Parent Soybean Seed Grower Agreement known as contract 4600026745 ("Agreement 45").

44.     A true and correct redacted copy of Agreement 45 is attached as **Exhibit 7** and is incorporated herein by this reference. See Exhibit 7.

45.     Plaintiff and Defendants Wade, Lee, and Nathan Schmidgall entered Agreement 45.

**Contract 4600026746 (Production "Agreement 46") (Exhibit 8)**

46.     On or about April 17, 2024, Plaintiff, on the one hand, and Wade Schmidgall, Lee Schmidgall, and Nathan Schmidgall, on the other, entered into a 2024 Bayer Parent Soybean Seed Grower Agreement known as contract 4600026746 ("Agreement 46").

47.     A true and correct redacted copy of Agreement 46 is attached as **Exhibit 8** and is incorporated herein by this reference. See Exhibit 8.

48.     Plaintiff and Defendants Wade, Lee, and Nathan Schmidgall entered Agreement 46.

**Contract 4600026886 (Production "Agreement 86") (Exhibit 9)**

49.     On or about May 7, 2024, Plaintiff, on the one hand, and Wade Schmidgall and Nathan Schmidgall on the other, entered into a 2024 Bayer Parent Soybean Seed Grower Agreement known as contract 4600026886 ("Agreement 86").

50.    A true and correct redacted copy of Agreement 86 is attached as **Exhibit 9** and is incorporated herein by this reference. See Exhibit 9.

51.    Plaintiff and Defendants Wade and Nathan Schmidgall entered Agreement 86.

52.    The foregoing Parent Soybean Seed Grower Agreements in Exhibits 1 through Exhibit 9 are referred to collectively as the "Agreements."

53.    The Party and growing season information for the Agreements can be summarized as follows:

| Contract Number | Exhibit Designation | Growing Season | Wade Schmidgall is a signatory and party | Lee Schmidgall is a signatory and party | Nathan Schmidgall is a signatory and party |
|---|---|---|---|---|---|
| 4600017801 | 1 | 2023 | ✓ | | |
| 4600017802 | 2 | 2023 | ✓ | | |
| 4600018588 | 3 | 2023 | ✓ | ✓ | |
| 4600026742 | 4 | 2024 | ✓ | ✓ | ✓ |
| 4600026743 | 5 | 2024 | ✓ | ✓ | ✓ |
| 4600026744 | 6 | 2024 | ✓ | ✓ | ✓ |
| 4600026745 | 7 | 2024 | ✓ | ✓ | ✓ |
| 4600026746 | 8 | 2024 | ✓ | ✓ | ✓ |
| 4600026886 | 9 | 2024 | ✓ | | ✓ |

See Exs. 1 through 9.

54.    Defendants Wade, Lee, and Nathan Schmidgall signed the Agreements as "Growers." See e.g., Cover page of each Agreement ("Grower Signature Page").

55.     The substantive terms of the Agreements are the same, other than the calendar year, the date on which the Agreement was signed, the variety of seed being grown, the acreage of the growing site, the particular defendants executing particular Agreements, and the Bayer Production representatives executing the Agreement.

56.     "Parent Seed" is defined in the Agreements as "the seed Bayer shall supply to Grower to grow Produced Seed for Bayer." See e.g., Agreements, Appendix 1 Definitions, ¶ 20 (Exs. 1 through 9).

57.     "Produced Seed" is defined in the Agreements as "all Commercial Seed, Regulated Seed and Stewarded Seed grown from Parent Seed." Agreements, Appendix 1 Definitions, ¶ 23 (Exs. 1 through 9).

58.     Paragraph Two of the Agreements provides: "**BAYER OBLIGATIONS:** Bayer shall provide the inputs and services set forth in *Exhibit A* [to each Agreement]." Agreements, ¶ 2 (Exs. 1 through 9).

59.     Paragraph Three of the Agreements provides: "**GROWER OBLIGATIONS:** Grower shall grow the Produced Seed and perform the activities set forth in Exhibit B [to each Agreement] (the 'Grower Obligations') for Bayer on the contract acreage identified on the Signature Page (the 'Contract Acreage')." Agreements, ¶ 3 (Exs. 1 through 9).

60.     Paragraph Four of the Agreements provides: "**FEES, INVOICING AND PAYMENT TERMS:** In consideration for Grower's performance hereunder, Bayer shall pay Grower the amounts set forth in Section 2 of Exhibit C [to each Agreement] (the 'Fees') . . . ." Agreements, ¶ 4 (Exs. 1 through 9).

61.     Paragraph Five of the Agreements provides: "**LICENSE GRANT**: Bayer grants to Grower a limited license, under Bayer's and its affiliates' patent rights, to use Roundup Ready 2

Yield®, Roundup Ready 2 Xtend®, or Vistive® Gold Parent Seed solely for growing Produced

Seed on the Contract Acreage." Further, "[G]rower shall cooperate fully in efforts to protect

intellectual property rights Bayer may have in the Parent Seed, plants grown from it, or the

Produced Seed, and Grower shall notify Bayer if Grower has a reasonable basis to believe that

such rights may have been infringed." Agreements, ¶ 5 (Exs. 1 through 9).

62.     Paragraph One of Exhibit A of the Agreements provides: "**Parent Seed.** Bayer shall

provide Grower with Parent Seed for planting the Contract Acreage in exchange for the applicable

Parent Seed Use Fee as described in Section 3 of Exhibit C." Agreements (Exhibit A to Exs. 1

through 9).

63.      Paragraph One, "Contract Acreage Confirmation and Access," of Exhibit B of the

Agreements states as follows:

> a. If requested by Bayer, Grower shall supply maps, GPS coordinates, and legal
> descriptions of the Contract Acreage prior to planting and/or sign an acreage
> confirmation form confirming the exact Contract Acreage as measured by Bayer.
> b. Access to the Contract Acreage must be reasonably adequate for all seed
> production activities, including entrances and driveways with clear visibility for
> buses and farming equipment.

Agreements (Exhibit B to Exs. 1 through 9).

64.     Paragraph Two of Exhibit A of the Agreements provides: "**Delivery of Produced

Seed.** Bayer shall specify the time and place for delivery of Produced Seed." Agreements (Exhibit

A to Exs. 1 through 9).

65.     Paragraph Three of Exhibit B of the Agreements provides: "**Farming Practices.**

(a) Grower shall perform all farming practices necessary to grow a crop of Produced Seed of the

highest quality and yield, from pre-planting through delivery to Bayer or to a location specified by

Bayer." Agreements (Exhibit B to Exs. 1 to 9).

66.     Paragraph Six of Exhibit B of the Agreements, titled "**Storage and Delivery**," provides: "d. Grower shall comply with Bayer's instructions regarding the time and place for delivery of Produced Seed. At Bayer's request, Grower shall assist in the delivery of the Produced Seed by providing operational equipment and labor needed for (i) unloading seed from the Storage Bin and (ii) loading the seed onto trucks for delivery." Agreements (Exhibit B to Exs. 1 to 9).

67.     Paragraph Seven of Exhibit B of the Agreements provides: "**Inspection and Audit.** Grower shall provide access to and the right to inspect and test the Contract Acreage, plants on the Contract Acreage, and Grower's premises, equipment, facilities, methods and records as deemed necessary by Bayer to meet federal and/or state field sanitation and regulatory requirements and to confirm compliance with this Agreement." Agreements (Exhibit B to Exs. 1 to 9).

68.     Paragraph Seven of Exhibit B of the Agreements continues, stating as follows:

> Additionally, Grower consents to Bayer review and audit of Grower's Farm Service Agency crop reporting information, including without limitation Forms 578 and corresponding aerial photographs, Risk Management Agency claim documentation, dealer/retailer invoices for seed and chemical transactions, and records for the sale or transfer of soybeans for the current and prior crop years. Grower agrees to cooperate in the resolution of any audit discrepancies.

Agreements (Exhibit B to Exs. 1 through 9).

69.     Paragraph Eight of Exhibit B of the Agreements provides: "**Climate FieldView™ Plus Subscription.** Prior to planting, Grower shall acquire a subscription to Climate FieldView™ Plus and shall maintain such subscription at least until all Produced Seed is harvested. Grower shall collect soybean production information from the Contract Acreage and share such information with Bayer. Grower shall ensure Bayer has access to planting and harvest data from the Contract Acreage or shall upload such data via the Climate data inbox within 7 calendar days of planting and harvesting each field." Agreements (Exhibit B to Exs. 1 through 9).

70.     Paragraph One of the Terms and Conditions of the Agreements provides:
"**Bailment and Risk of Loss.** (a) *Grower shall hold the Parent Seed, the plants grown from it and all Produced Seed as bailee only, and all rights of ownership in them shall remain in Bayer at all times.* Except as otherwise provided herein, Grower shall bear all risk of loss and liability for loss of or damage to the Parent Seed, the plants grown from it and all Produced Seed until the time the Produced Seed is transferred to Bayer. Grower shall not transfer or allow access to any third party, other than as provided under this Agreement, to the Parent Seed, the plants grown from it and/or the Produced Seed." Production Agreements, Exs. 1 through 9, "Terms and Conditions" (emphasis added).

71.     Paragraph Three of the Terms and Conditions of the Agreements provides:
"**Remedies**. In the event Grower fails to transfer the Produced Seed to Bayer according to the terms of this Agreement, Grower shall provide the following remedies, at Bayer's election: specific performance and replevin." Production Agreements, Exs. 1 through 9, "Terms and Conditions."

72.     Exhibit C to the Agreements, titled "FEES, INVOICING AND PAYMENT TERMS," includes provisions regarding Bayer Production's right to "accept" the Produced Seed and therefore use the Produced Seed for sale to Bayer Production's grower/customers, or alternatively, "releasing" the Produced Seed for delivery to an elevator for non-seed purposes.

73.     When Produced Seed is delivered to an elevator, the Produced Seed is being sold as a commodity, for non-seed purposes, rather than being used as seed for a future growing season.

74.     Section 4, "ACCEPTABILITY OF CROP," to Exhibit C to the Agreements, provides as follows:

a.      **Acceptance or Rejection**. Bayer may Accept any part of Grower's Produced Seed that meets the Quality Standards; provided, however, that Bayer reserves the right to waive any Quality Standard. Bayer, in its sole judgment, may Reject all or any part of Grower's Produced Seed that does not meet the Quality

13

Standards. Even if the Produced Seed meets Quality Standards, Bayer may Accept and then Release for delivery to an Elevator or a storage location identified by Bayer. Grower may request a copy of the Quality Standards from the Site. Additionally, Bayer may Release or Reject Produced Seed if Grower fails to comply with any of the Grower Obligations. Bayer may Release or Reject Produced Seed any time during the growing season through harvest and a reasonable period afterward for conditioning and testing the Produced Seed by giving notice to Grower of Bayer's decision to Release or Reject.

b.    **Accepted, Released or Rejected Commercial Seed.** Grower must deliver any Accepted Commercial Seed in accordance with the provisions of Section 6 of Exhibit B. Grower shall deliver Released or Rejected Commercial Seed, whether in transit or delivered to Bayer, to an Elevator at no additional expense to Bayer. Such delivery shall occur within 30 days of Release or Rejection notification.

See Section 4, "ACCEPTABILITY OF CROP," to Exhibit C to the Agreements (Exs. 1 through 9) (emphasis added).

## IV.    THE NATURE AND CIRCUMSTANCES OF DEFENDANTS' BREACHES AND TORTIOUS CONDUCT

75.    Pursuant to the Agreements, Defendants contracted with Plaintiff as independent contractors to provide services in growing Plaintiff's soybean seed. See Agreements, p. 2.

76.    Under the Agreements, Plaintiff provided Defendants with Parent Seed from which Defendants were to grow Produced Seed for Plaintiff.

77.    The Parent Seed provided by Plaintiff is owned by Plaintiff.

78.    The Parent Seed provided by Plaintiff included revolutionary biotechnologies, developed by Plaintiff and/or its affiliates after the investment of substantial time, expertise, and expense. These patented technologies enable soybeans (and other crops) to tolerate glyphosate and dicamba, widely used agricultural herbicides, and increase yields.

79.    Defendants had permission to grow the Parent Seed into patented Produced Seed pursuant to a limited license granted by Plaintiff. See e.g., Agreements, Section 5, p. 2 ("License Grant") (Exs. 1 through 9).

80.     Plaintiff provided Defendants with Parent Seed for planting on the contract acreage outlined in the Agreements, with such Agreements attached hereto as Exhibits 1 through 9.

81.     Defendants hold the Parent Seed, the plants grown from it and all Produced Seed as bailee only, and the rights of ownership in them remain in Plaintiff at all times. See Agreements, ("Terms and Conditions" thereto ¶ 1(a)) (Exs. 1 through 9).

82.     Plaintiff compensated Defendants in 2023 as provided for by the agreements for the 2023 growing season. See Exs. 1 through 3.

83.     In order for Plaintiff to process the 2024 Agreements and compensate Defendants for those 2024 Agreements, Defendants agreed to and are required to submit confirmed product acreage. Plaintiff cannot process any eligible payments to the 2024 Agreements until the confirmed production acreage and other contractually required information is received.

84.     Based on information and belief, in both the 2023 growing season and the 2024 growing season, Defendants performed farming practices necessary to grow a crop of Produced Seed from the Parent Seed Bayer provided to Defendants by Plaintiff.

85.     Based on the information available to Plaintiff, in 2023 Defendants Wade and Lee Schmidgall, collectively, planted approximately 340 acres. See Exhibits 1 through 3.

86.     Pursuant to Plaintiff's direction, the bins associated with the 2023 Agreements (01, 02, and 88) were released not later than on or about February 26, 2024 to be delivered to the elevator for non-seed purposes.

87.     Pursuant to Plaintiff's direction, the bins containing the Produced Seed associated with certain 2024 Agreements (43, 44, 45, 46, and 86) were released not later than on January 23, 2025 to be delivered to the elevator for non-seed purposes.

88.     Pursuant to Plaintiff's direction, the bins associated with the final 2024 Agreement (42) were released not later than May 30, 2025 to be delivered to the elevator for non-seed purposes.

89.     After receiving the release notices, this Produced Seed should have been delivered to an elevator for non-seed purposes. See Exhibit B of the Agreements, ¶ 4, 6(d).

90.     To date, Plaintiff has not received notification from Defendants or from an elevator regarding these bushels of Produced Seed, in regard to either the 2023 or 2024 growing season.

91.     Based on Plaintiff's investigation to date, Defendants Wade and Lee Schmidgall sold or transferred the 2023 crop and kept the sale/transfer proceeds and/or otherwise benefited from the sale/transfer proceeds, which belong to Plaintiff Bayer Production, the owner of the Produced Seed.

92.     Based on Plaintiff's investigation to date, Defendants Wade, Lee and Nathan Schmidgall sold or transferred the 2024 crop and kept the sale/transfer proceeds and/or otherwise benefited from the sale/transfer proceeds, which belong to Plaintiff Bayer Production, the owner of the Produced Seed.

**Plaintiff Bayer Production's Numerous Attempts to Resolve This Matter Prior to Litigation**

93.      On or about September 9, 2024, Plaintiff sent correspondence dated September 9, 2024, attached hereto and incorporated herein by this reference as Exhibit 10, to Defendants Wade, Lee and Nathan Schmidgall via Wade Schmidgall providing notice of breaches of the Agreements and requesting information as to the 2023 and 2024 Produced Seed.

94.     Plaintiff's correspondence dated September 9, 2024 confirmed that the Produced Seed from the 2023 growing season was released from use for seed purposes, and therefore should have been delivered to an elevator for non-seed purposes. See Exhibit 10.

16

95.     Plaintiff's correspondence dated September 9, 2024 confirmed Plaintiff's bushel estimates of Produced Seed from the 2023 growing season, as follows:

| Contract Number | Exhibit | Growing Season | Estimated Bushels |
|---|---|---|---|
| 4600017801 ("01") | 1 | 2023 | 11,995 |
| 4600017802 ("02") | 2 | 2023 | 12,404 |
| 4600081588 ("88") | 3 | 2023 | 2,965 |

See Exhibit 10.

96.     Upon information and belief, Plaintiff's bushel estimates in Exhibit 10 were and are accurate.

97.     Plaintiff's September 9, 2024 correspondence includes the following excerpt regarding the 01, 02, and 88 Production Agreements, each from the 2023 growing season, stating:

> After receiving the release notice, this product should have been delivered to an elevator and sold in the name of Bayer. As of 9/9/2024, we have not received notification from you or an elevator regarding these bushels, and the bins have been visually confirmed as having product removed and/or being emptied. ***Please provide an update with the following information: Elevator the product was delivered to, final delivery date, bushels delivered from each bin, and payment status (Are the bushels available for Bayer to collect payment on or has another entity collected payment).***

Exhibit 10.

98.     Plaintiff's September 9, 2024 correspondence includes the following excerpt regarding the 42, 43, 44, 45 46, and 86 Production Agreements, each from the 2024 growing season, stating:

> The above contracts were issued seedstock in 2024, but we have not received communication to confirm the following information: Planting Dates, Planted Acres, and Pesticide Applications. ***Please provide an update on the contracts listed above for planting dates, planted acres, and pesticide applications made since 30 days prior to planting. Please respond with the requested information by 9/13/2024.***

Exhibit 10.

99.    Neither Wade nor Lee nor Nathan Schmidgall responded to Plaintiff's correspondence dated September 9, 2024.

100.    On or about September 27, 2024, Plaintiff sent correspondence dated September 27, 2024, attached hereto and incorporated herein by this reference as Exhibit 11, to Defendants demanding information and records regarding (a) the Produced Seed from the 2023 soybean crop and (b) the soybean plants currently grown and/or then growing from Parent Seed and all Produced Seed from the 2024 crop.

101.    Plaintiff's correspondence dated September 27, 2024 included, inter alia, (a) Notice of Breaches, (b) Demand for inspection, testing and performance, and (c) Demand for information and records regarding (i) "Produced Seed" from Defendants' 2023 soybean crop; and (ii) soybean plants then currently grown and/or growing from Parent Seed and all "Produced Seed" from Defendants 2024 soybean crop.

102.    Defendants did not respond to Plaintiff's correspondence dated September 27, 2024.

103.    Not later than January 23, 2025, Plaintiff emailed notice to Defendants that most of the Produced Seed from the 2024 growing season was released from use for seed purposes, and therefore should have been delivered to an elevator for non-seed purposes.

104.    On or about April 17, 2025, Plaintiff sent correspondence dated April 17, 2025 to Defendants Wade, Lee and Nathan Schmidgall via Wade Schmidgall, attached hereto and incorporated herein by this reference as Exhibit 12, informing Defendants that over 30 days had passed since the original release date for the 2024 growing season, and the 2024 Produced Seed

had not been delivered to the elevator, in violation of the Agreements for the 2024 growing season.

See Ex. 12, referring to the 43, 44, 45, 46, and 86 Production Agreements, Exs. 5 through 9.

105.    Plaintiff's correspondence dated April 17, 2025 confirmed Plaintiff's bushel estimates of Produced Seed from the 2024 growing season, as follows:

| Contract Number | Exhibit | Growing Season | Estimated Bushels |
|---|---|---|---|
| 4600026743 ("43") | 5 | 2024 | 12,813[2] |
| 4600026744 ("44") | 6 | 2024 | |
| 4600026745 ("45") | 7 | 2024 | 13,958[3] |
| 4600026886 ("86") | 9 | 2024 | |
| 4600026746 ("46") | 8 | 2024 | 3,773 |

See Exhibit 12.

106.    Plaintiff's April 17, 2025 correspondence, which included the following as a heading, "**Important Notice – Please read this document in its entirety**," also stated:

At this time, the above listed Agreements and bushels have exceeded the 30 day delivery period, and we request your immediate attention, coordination, and communication to complete the delivery of these released bushels as soon as possible . . . In the event that these bushels have been delivered as of receiving this notice, please contact Stacy, Chet, Nate or Zach and disregard this notice. ***As a reminder please contact Stacy Milburn at 618-267-9591 when you begin and finish hauling. If Stacy is unavailable please contact Zach Benson at 269-568-3214.*** If you have any questions, please do not hesitate to contact us.

Id.

107.    Defendants did not respond to Plaintiff's correspondence dated April 17, 2025.

---

[2] Bushels produced under Production Agreements 43 and 44 were combined in the same bin. The April 17, 2025 correspondence notes their shared bin tag number (bin tag number 37479) and provides a combined bushel estimate for these Production Agreements. See Exhibit 12.

[3] Bushels produced under Production Agreements 45 and 86 were combined in the same bin. The April 17, 2025 correspondence notes their shared bin tag number (bin tag number 37480). Because the production for these two agreements was placed in a single bin, a combined bushel estimate is used. This table corrects the figures in the April 17, 2025 correspondence in regard to Agreement 86.

108.    On or about April 25, 2025, Plaintiff sent correspondence dated April 25, 2025, attached hereto and incorporated herein by this reference as Exhibit 13, to Defendants Wade, Lee and Nathan Schmidgall via Wade Schmidgall reiterating that Plaintiff had not received the 2024 Seed and reminding Defendant Wade that Defendants are contractually required to and needed to submit confirmed production acreage and information in order for Plaintiff to process any eligible payments.

109.    Defendants did not respond to Plaintiff's correspondence dated April 25, 2025.

110.    On or about May 23, 2025, counsel for Bayer Production sent Defendants correspondence dated May 23, 2025, attached hereto and incorporated herein by this reference as Exhibit 14, via FedEx and U.S. Mail providing Defendants additional notice of their breaches of their Agreements and requesting information regarding the 2023 and 2024 Parent Seed and 2023 and 2024 Produced Seed.

111.    In addition to being sent via Federal Express and U.S. Mail, the correspondence dated May 23, 2025 from counsel for Plaintiff was hand delivered to Wade Schmidgall and to the residence of Lee Schmidgall.

112.    Defendants did not respond to correspondence dated May 23, 2025 from counsel for Plaintiff.

113.    Plaintiff's correspondence dated May 30, 2025, attached hereto and incorporated by reference as Exhibit 15, confirmed the bushel estimates of Produced Seed from the growing season of 16,820 bushels. With Defendants having delivered 2,468.33 bushels produced under Agreement 42 to Plaintiff, the May 30, 2025 correspondence further confirmed the estimated number of remaining, rounded to the nearest number, leaving an estimated 14,352 bushels remaining that were not delivered, as follows:

| Contract Number | Exhibit | Growing Season | Original Estimated Bushels | Estimated Bushels Remaining |
|---|---|---|---|---|
| 4600026742 ("42") | 4 | 2024 | 16,820 | 14,352 |

See Exhibit 15.

114.    Defendants did not respond to Plaintiff's correspondence dated May 30, 2025.

115.    Indeed, Defendants have not responded to any of the letters sent by or on behalf of Plaintiff in 2025.

116.    Plaintiff is entitled to the information and records it sought in Exhibits 10 through 15. See e.g., Agreements, Exhibit B, Sections 1, 7 and 8; Exhibit E, Section 1.

117.    Defendants' failure to provide the information and records requested in Exhibits 10 through 14 are additional breaches by Defendants of the Agreements.

**Plaintiff's Damages for Breach of Contract**

118.    The commodity price for soybeans depends on the local market and often fluctuates from day to day.

119.    Each Agreement identifies local market elevators used to determine the market price for soybeans produced under the given Agreement. Each Agreement identifies the local market elevator as "0043 Central Illinois Elevators Stonington IL." See Agreements at 1 (Exs. 1 through 9).

120.    To calculate the market price for soybeans under each Agreement ("Contract Price"), Defendants were required under the Agreements to choose a date within a given election period (the "Selection Date") on which the Produced Seed would be priced using an approximate average of the local elevators' rates. See Exhibit C of Agreements at ¶ 2(b) (Exs. 1 through 9).

121.    Defendants chose a Selection Date on which to price Produced Seed grown under Agreement 88. Using the Selection Date chosen, Defendants generated a Contract Price of $11.77 per bushel of soybeans produced under Agreement 88.

122.    Agreement 88 is the only Production Agreement for which Defendants chose a Selection Date. To date, Defendants have not chosen Selection Dates for Agreements 01, 02, 42, 43, 44, 45, 46, and 86.

123.    The 2023 Agreements provide: "**If a Grower does not select a date, April 29, 2024, will be the Selection Date.**" See Exhibit C of Agreements 01, 02, and 88 at ¶ 2(b) (Exhibits 1 through 3).

124.    Using a Selection Date of April 29, 2024, the Contract Price of Produced Seed grown under Agreements 01 and 02 is $11.7775.

125.    The 2024 Agreements provide: "**If a Grower does not select a date, April 29, 2025, will be the Selection Date.**" See Exhibit C of Agreements 42, 43, 44, 45, 46, and 86, at ¶ 2(b) (Exhibits 4 through 9).

126.    Using a Selection Date of April 29, 2025, the Contract Price of Produced Seed grown under Agreements 42, 43, 44, 45, 46, and 86 is $10.65.

127.    Based on the acreage included in the Agreements, as well as the actual or contractual estimates of the number of bushels never received by Plaintiff and Contract Prices of the same, Plaintiff has incurred contractual monetary damages of no less than $800,396.16, with the exact amount to be determined at trial, before considering costs, fees and interest.

128.    The $800,396.16 of contractual monetary damages referenced in the prior paragraph is comprised of the following:

22

| Contract Number | Ex. | Growing Season | Wade S. is a signatory and party | Lee S. is a signatory and party | Nathan S. is a signatory and party | Estimated bushels of Produced Seed as communicated to Defendants Exs. 10, 12, 15 | Estimated bushels of Produced Seed, allocated[4] per Agreement, not yet received by Plaintiff | Contract Price | Damages |
|---|---|---|---|---|---|---|---|---|---|
| 4600017801 ("01") | 1 | 2023 | ✓ | | | 11,995 | 11,995 | $11.7775 | $141,271.11 |
| 4600017802 ("02") | 2 | 2023 | ✓ | | | 12,404 | 12,404 | $11.7775 | $146,088.11 |
| 4600081588 ("88") | 3 | 2023 | ✓ | ✓ | | 2,965 | 2,965 | $11.77 | $34,898.05 |
| 4600026742 ("42") | 4 | 2024 | ✓ | ✓ | ✓ | 16,820 | 14,351.67 | $10.65 | $152,845.29 |
| 4600026743 ("43") | 5 | 2024 | ✓ | ✓ | ✓ | 12,813 | 5,420.88 | $10.65 | $57,732.37 |
| 4600026744 ("44") | 6 | 2024 | ✓ | ✓ | ✓ | | 7,392.12 | $10.65 | $78,726.08 |
| 4600026745 ("45") | 7 | 2024 | ✓ | ✓ | ✓ | 13,958 | 9,728.30 | $10.65 | $103,606.40 |
| 4600026886 ("86") | 9 | 2024 | ✓ | | ✓ | | 4,229.70 | $10.65 | $45,046.31 |
| 4600026746 ("46") | 8 | 2024 | ✓ | ✓ | ✓ | 3,773 | 3,773 | $10.65 | $40,182.45 |
| **Total** | | | | | | | | | **$800,396.16** |

129.    As a party and signatory to each of the Agreements, Defendant Wade Schmidgall is liable for all of the $800,396.16 in contractual monetary damages.

---

[4] Where bushels were combined in the same bin (Agreements 43 and 44 and Agreements 45 and 86), Plaintiff used information available to it, including harvest reporting forms, to estimate the percentage of the combined total which us attributable to each Agreement.

130.    As a party and signatory to Agreements 88, 42, 43, 44, 45, and 46, Defendant Lee Schmidgall is jointly and severally liable, along with Wade Schmidgall, for $467,990.63 of the $800,396.16 in contractual monetary damages.

131.    As a party and signatory to Agreements 42, 43, 44, 45, 46 and 86, Defendant Nathan Schmidgall is jointly and severally liable, along with Wade Schmidgall, for $467,990.63 of the $800,396.16 in contractual monetary damages.

**Plaintiff's Damages for Unjust Enrichment**

132.    Plaintiff provided goods of real and substantial value to Defendants, who profited from receipt of the same at Plaintiff's expense, making it unjust and inequitable that Defendants retain the benefits conferred.

133.    The value that Plaintiffs provided to Defendants includes:

a.  The value of high quality Parent Seed for planting in the 2023 and 2024 growing seasons free of charge;

b.  The Parent Seed Treatments that Plaintiff provided in 2023 and 2024 free of charge;

c.  The grain commodity value of Produced Seed harvested in 2023 and 2024 which Defendants held only as bailees but either retained or sold, pocketing the profits;

d.  The funds constituting 80% of the Contract Price for 2023 Produced Seed which Plaintiff remitted to Defendants as a good faith gesture prior to receiving the 2023 Produced Seed, which Defendants never delivered;

e.  The Premium Payments based on the high quality of the 2023 Produced Seed which Plaintiff remitted to Defendants prior to receiving the 2023 Produced Seed, which Defendants never delivered; and

      f.   The value of the Parent Seed box containers which the 2024 Parent Seed was stored in for delivery to Defendants but which Defendants failed to return to Plaintiff.

134.   Based on the foregoing paragraph, Plaintiff has incurred monetary damages of no less than $1,088,348.21, representing the value of benefits unjustly retained by Defendants, with the exact amount to be determined at trial, before considering costs, fees and interest.

135.   Defendants were enriched by the receipt of no less than $1,088,348.21, that enrichment of no less than $1,088,348.21was at the expense of Plaintiff, and it would be unjust to allow Defendants to retain the benefits of such enrichment.

136.   The $1,088,348.21 of monetary damages referenced in the prior two paragraphs is comprised of the following:

| Contract Number | Ex. | Growing Season | Wade S. is a signatory | Lee S. is a signatory | Nathan S. is a signatory | Parent Seed Value (at Plaintiff's sale price) | Parent Seed Treatment Value ($10.25/unit) | Produced Seed Grain Commodity Value (reflected by Contract Price) | Contract Price paid to Defendants | Premium Payments made to Defendants | Seed Box Value ($692/unit) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4600017801 ("01") | 1 | 2023 | ✓ | | | $6,177.60 | $1,439.10 | $141,271.11 | $84,798.00 | $11,600.00 | $0 |
| 4600017802 ("02") | 2 | 2023 | ✓ | | | $5,544.00 | $1,291.50 | $146,088.11 | $82,932.44 | $11,362.40 | $0 |
| 4600081588 ("88") | 3 | 2023 | ✓ | ✓ | | $1,760.00 | $410.00 | $34,898.05 | $22,598.40 | $3,680.00 | $0 |
| 4600026742 ("42") | 4 | 2024 | ✓ | ✓ | ✓ | $9,240.45 | $2,086.90 | $152,845.29 | $0 | $0 | $4,844.00 |
| 4600026743 ("43") | 5 | 2024 | ✓ | ✓ | ✓ | $3,520.00 | $820.00 | $57,732.37 | $0 | $0 | $1,384.00 |
| 4600026744 ("44") | 6 | 2024 | ✓ | ✓ | ✓ | $5,702.40 | $1,328.40 | $78,726.08 | $0 | $0 | $2,768.00 |
| 4600026745 ("45") | 7 | 2024 | ✓ | ✓ | ✓ | $7,040.00 | $1,640.00 | $103,606.40 | $0 | $0 | $2,768.00 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 4600026746 ("46") | 8 | 2024 | ✓ | ✓ | ✓ | $2,728.00 | $0 | $40,182.45 | $0 | $0 | $2,076.00 |
| 4600026886 ("86") | 9 | 2024 | ✓ | | ✓ | $4,392.96 | $635.50 | $45,046.31 | $0 | $0 | $1,384.00 |
| **Subtotal** | | | | | | **$46,105.41** | **$9,651.40** | **$800,396.16** | **$190,328.84** | **$26,642.40** | **$15,224.00** |
| **Total** | | | | | | **$1,088,348.21** | | | | | |

137. The Parent Seed provided to Defendants included patent biotechnology, including without limitation, Plaintiff Roundup Ready 2 Yield® trait.

138. Plaintiff will be irreparably harmed if its patented Parent Seed or Produced Seed is sold or otherwise transferred to unknown entities who do not have licenses to use Plaintiff's Parent or Produced Seed, each of which includes patented biotechnology.

139. A list of all exhibits to this Complaint is included as the final page of this submission.

## COUNT I – BREACH OF CONTRACT FOR DAMAGES
### (Defendant Wade Schmidgall)

140. Plaintiff expressly incorporates the allegations in paragraphs 1 through 139 of this Complaint as if fully set forth herein.

141. Agreement 01 is attached to this Complaint as Exhibit 1. See Exhibit 1 (Agreement No. 4600017801).

142. Agreement 01 pertains to Soybean Parent Seed being planted on a field of approximately 150 acres during the 2023 growing season. Id. (cover page).

143. The Parties entered into Agreement 01. See Exhibit 1.

144. Agreement 01 is a valid and binding contract.

145. Plaintiff fully performed its obligations under the Agreement 01, including and without limitation, by providing Defendant Wade Schmidgall with Parent Seed, compensating

26

Defendant Wade Schmidgall pursuant to Agreement 01, and specifying the time and place for delivery of the 2023 Produced Seed.

146.     Defendant Wade Schmidgall breached Agreement 01 by not delivering the 2023 Produced Seed to the elevator in the name of Plaintiff after receiving the release notice from Plaintiff. See Exhibit B of Agreement 01, ¶ 4, 6(d).

147.     Although Plaintiff has demanded information and records regarding the 2023 Produced Seed relating to Agreement 01, including without limitation in correspondence dated September 9, 2024 (Exhibit 10), September 27, 2024 (Exhibit 11), and May 23, 2025 (Exhibit 14), Defendant Wade Schmidgall has not provided the requested information.

148.      Although Plaintiff has provided written notices of breach to Defendant Wade Schmidgall, he has failed to cure the breach.

149.     Upon information and belief, Defendant Wade Schmidgall (a) sold or transferred the 2023 Produced Seed relating to Agreement 01 and (b) received proceeds from such sale/transfer and/or a benefit from the proceeds, all in breach of Agreement 01.

150.     Based on post-harvest estimates, the yield from the crops grown pursuant to Agreement 01 resulted in a harvest of 11,995 bushels.

151.     The 11,995 bushel estimate was communicated to Defendant Wade Schmidgall in correspondence dated September 9, 2025 (Exhibit 10), which Mr. Schmidgall has not disputed.

152.     The Contract Price for Produced Seed subject to Agreement 01, which reflects an approximate average of the market rates of local elevators, is $11.7775 per bushel.

153.     Therefore, Plaintiff estimates that the 2023 Produced Seed subject to Agreement 01 had a value of no less than approximately $141,271.11.

154.     As a direct and proximate result of Defendant Wade Schmidgall's breaches, Plaintiff has suffered monetary damages in the form of lost revenue of no less than $141,271.11.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant Wade Schmidgall and in Plaintiff's favor on Count I of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to exceed $75,000 and be not less than $141,271.11; plus interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

### COUNT II – BREACH OF CONTRACT FOR DAMAGES
### (Defendant Wade Schmidgall)

155.     Plaintiff expressly incorporates the allegations in paragraphs 1 through 154 of this Complaint as if fully set forth herein.

156.     Agreement 02 is attached to this Complaint as Exhibit 2. See Exhibit 2 (Agreement 4600017802).

157.     Agreement 02 pertains to Soybean Parent Seed being planted on a field of approximately 150 acres during the 2023 growing season. Id. (cover page).

158.     The Parties entered into Agreement 02. See Exhibit 2.

159.     Agreement 02 is a valid and binding contract.

160.     Plaintiff fully performed its obligations under the Agreement 02, including and without limitation, by providing Defendant Wade Schmidgall with Parent Seed, compensating Defendant Wade Schmidgall pursuant to Agreement 02, and specifying the time and place for delivery of the 2023 Produced Seed.

161.    Defendant Wade Schmidgall breached Agreement 02 by not delivering the 2023 Produced Seed to the elevator in the name of Plaintiff after receiving the release notice from Plaintiff. See Exhibit B of Agreement 02, ¶ 4, 6(d).

162.    Although Plaintiff has demanded information and records regarding the 2023 Produced Seed relating to Agreement 02, including without limitation in correspondence dated September 9, 2024 (Exhibit 10), September 27, 2024 (Exhibit 11), and May 23, 2025 (Exhibit 14), Defendant Wade Schmidgall has not provided the requested information.

163.    Although Plaintiff has provided written notices of breach to Defendant Wade Schmidgall, he has failed to cure the breach.

164.    Upon information and belief, Defendant Wade Schmidgall (a) sold or transferred the 2023 Produced Seed relating to Agreement 02 and (b) received proceeds from such sale/transfer and/or a benefit from the proceeds, all in breach of Agreement 02.

165.    Based on post-harvest estimates, the yield from the crops grown pursuant to Agreement 02 resulted in a harvest of 12,404 bushels.

166.    The 12,404 bushel estimate was communicated to Defendant Wade Schmidgall in correspondence dated September 9, 2025 (Exhibit 10), which Mr. Schmidgall has not disputed.

167.    The Contract Price for Produced Seed subject to Agreement 02, which reflects an approximate average of the market rates of local elevators, is $11.7775 per bushel.

168.    Therefore, Plaintiff estimates that the 2023 Produced Seed subject to Agreement 02 had a value of no less than approximately $146,088.11.

169.    As a direct and proximate result of Defendant Wade Schmidgall's breaches, Plaintiff suffered monetary damages in the form of lost revenue of no less than $146,088.11.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant Wade Schmidgall and in Plaintiff's favor on Count II of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to exceed $75,000 and be not less than $146,088.11; plus and interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

## COUNT III – BREACH OF CONTRACT FOR DAMAGES
### (Defendants Wade and Lee Schmidgall)

170.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 169 of this Complaint as if fully set forth herein.

171.    Agreement 88 is attached to this Complaint as Exhibit 3. See Exhibit 3 (Agreement No. 4600018588).

172.    Agreement 88 pertains to Soybean Parent Seed being planted on a field of approximately 40 acres during the 2023 growing season. Id. (cover page).

173.    The Parties entered into Agreement 88. See Exhibit 3.

174.    Agreement 88 is a valid and binding contract.

175.    Plaintiff fully performed its obligations under Agreement 88, including and without limitation, by providing Defendants Wade and Lee Schmidgall with Parent Seed, compensating these Defendants Wade and Lee Schmidgall pursuant to Agreement 88, and specifying the time and place for delivery of the 2023 Produced Seed.

176.    Defendants Wade and Lee Schmidgall breached Agreement 88 by not delivering the 2023 Produced Seed to the elevator in the name of Plaintiff after receiving the release notice from Plaintiff. See Exhibit B of Agreement 88, ¶ 4, 6(d).

177.    Although Plaintiff has demanded information and records regarding the 2023 Produced Seed relating to Agreement 88, including without limitation in correspondence dated September 9, 2024 (Exhibit 10), September 27, 2024 (Exhibit 11), and May 23, 2025 (Exhibit 14), Defendants Wade and Lee Schmidgall have not provided the requested information.

178.    Although Plaintiff has provided written notices of breach to Defendants Wade and Lee Schmidgall, they have failed to cure the breach.

179.    Upon information and belief, Defendants Wade and Lee Schmidgall (a) sold or transferred the 2023 Produced Seed relating to Agreement 88 and (b) received proceeds from such sale/transfer and/or a benefit from the proceeds, all in breach of Agreement 88.

180.    Based on post-harvest estimates, the yield from the crops grown pursuant to Agreement 88 resulted in a harvest of 2,965 bushels.

181.    The 2,965 bushel estimate was communicated to Defendants Wade and Lee Schmidgall in correspondence dated September 9, 2025 (Exhibit 10), which Wade and Lee Schmidgall have not disputed.

182.    The Contract Price for Produced Seed subject to Agreement 88, which reflects an approximate average of the market rates of local elevators, is $11.77 per bushel.

183.    Therefore, Plaintiff estimates that the 2023 Produced Seed subject to Agreement 88 had a value of no less than approximately $34,898.05.

184.    As a direct and proximate result of Defendants Wade and Lee Schmidgall's breaches, Plaintiff suffered monetary damages in the form of lost revenue of no less than $34,898.05.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants Wade and Lee Schmidgall and in Plaintiff's favor on Count III of this Complaint and

award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to be not less than $34,898.05; plus and interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

## COUNT IV – BREACH OF CONTRACT FOR DAMAGES
### (All Defendants)

185.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 184 of this Complaint as if fully set forth herein.

186.    Agreement 42 is attached to this Complaint as Exhibit 4. See Exhibit 4 (Agreement No. 4600026742).

187.    Agreement 42 pertains to Soybean Parent Seed being planted on a field of approximately 225 acres during the 2024 growing season. Id.

188.    The Parties entered into Agreement 42. See Exhibit 4.

189.    Agreement 42 is a valid and binding contract.

190.    Plaintiff fully performed its obligations under Agreement 42, including and without limitation, by providing Defendants with Parent Seed and specifying the time and place for delivery of the 2024 Produced Seed.

191.    Defendants breached Agreement 42 by not delivering the 2024 Produced Seed to the elevator in the name of Plaintiff after receiving the release notice from Plaintiff. See Exhibit B of Agreement 42, ¶ 4, 6(d).

192.    Although Plaintiff has demanded information and records regarding the 2024 Produced Seed relating to Agreement 42, including without limitation in correspondence dated September 9, 2024 (Exhibit 10), September 27, 2024 (Exhibit 11), April 17, 2025 (Exhibit 12), April 25, 2025 (Exhibit 13) and May 23, 2025 (Exhibit 14), Defendants have not provided the requested information.

193.    Although Plaintiff provided written notice of breach to Defendants, Defendants have failed to cure these breaches.

194.    Upon information and belief, Defendants (a) sold or transferred the 2024 Produced Seed relating to Agreement 42 and (b) received proceeds from such sale/transfer and/or a benefit from the proceeds, all in breach of Agreement 42.

195.    Based on post-harvest estimates, the yield from the crops grown pursuant to Agreement 42 resulted in a harvest of 16,820 bushels.

196.    Defendants delivered to Plaintiff 2468.33 of the total 16,820 bushels grown pursuant to Agreement 42

197.    The estimate of 14,352 bushels remaining (rounded from 14,351.67) was communicated to Defendants in correspondence dated May 30, 2025 (Exhibit 15), which Defendants have not disputed.

198.    The Contract Price for Produced Seed subject to Agreement 42, which reflects an approximate average of the market rates of local elevators, is $10.65 per bushel.

199.    Therefore, Plaintiff estimates that the 2024 Produced Seed subject to Agreement 42 had a value of no less than approximately $152,845.29.

200.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered monetary damages in the form of lost revenue of no less than $152,845.29.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in Plaintiff's favor on Count IV of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to exceed $75,000 but not less than $152,845.29; plus interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

33

## COUNT V – BREACH OF CONTRACT FOR DAMAGES
### (All Defendants)

201.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 200 of this Complaint as if fully set forth herein.

202.    Agreement 43 is attached to this Complaint as Exhibit 5. See Exhibit 5 (Agreement No. 4600026743).

203.    Agreement 43 pertains to Soybean Parent Seed being planted on a field of approximately 80 acres during the 2024 growing season. Id. (cover page).

204.    The Parties entered into Agreement 43. See Exhibit 5.

205.    Agreement 43 is a valid and binding contract.

206.    Plaintiff fully performed its obligations under Agreement 43, including and without limitation, by providing Defendants with Parent Seed and specifying the time and place for delivery of the 2024 Produced Seed.

207.    Defendants breached Agreement 43 by not delivering the 2024 Produced Seed to the elevator in the name of Plaintiff after receiving the release notice from Plaintiff. See Exhibit B of Agreement 43, ¶ 4, 6(d).

208.    Although Plaintiff has demanded information and records regarding the 2024 Produced Seed relating to Agreement 43, including without limitation in correspondence dated September 9, 2024 (Exhibit 10), September 27, 2024 (Exhibit 11), April 17, 2025 (Exhibit 12), April 25, 2025 (Exhibit 13) and May 23, 2025 (Exhibit 14), Defendants have not provided the requested information.

209.    Although Plaintiff provided written notice of breach to Defendants, Defendants have failed to cure these breaches.

210.     Upon information and belief, Defendants (a) sold or transferred the 2024 Produced Seed relating to Agreement 43 and (b) received proceeds from such sale/transfer and/or a benefit from the proceeds, all in breach of Agreement 43.

211.     Based on post-harvest estimates, the yield from the crops grown pursuant to Agreement 43 resulted in a harvest of 5,420.88 bushels.

212.     The 12,813 bushel estimate, reflecting the combined harvest under Agreements 43 and 44, was communicated to Defendants in correspondence dated April 17, 2025 (Exhibit 12), which Defendants have not disputed.

213.     The Contract Price for Produced Seed subject to Agreement 43, which reflects an approximate average of the market rates of local elevators, is $10.65 per bushel.

214.     Therefore, Plaintiff estimates that the 2024 Produced Seed subject to Agreement 43 had a value of no less than approximately $57,732.37.

215.     As a direct and proximate result of Defendants' breaches, Plaintiff has suffered monetary damages in the form of lost revenue of no less than $57,732.37.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in Plaintiff's favor on Count V of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to be not less than $57,732.37; plus interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

### COUNT VI – BREACH OF CONTRACT FOR DAMAGES
**(All Defendants)**

216.     Plaintiff expressly incorporates the allegations in paragraphs 1 through 215 of this Complaint as if fully set forth herein.

217.     Agreement 44 is attached to this Complaint as Exhibit 6. See Exhibit 6 (Agreement No. 4600026744).

218.     Agreement 44 pertains to Soybean Parent Seed being planted on a field of approximately 120 acres during the 2024 growing season. Id. (cover page).

219.     The Parties entered in Agreement 44. See Exhibit 6.

220.     Agreement 44 is a valid and binding contract.

221.     Plaintiff fully performed its obligations under Agreement 44, including and without limitation, by providing Defendants with Parent Seed and specifying the time and place for delivery of the 2024 Produced Seed.

222.     Defendants breached Agreement 44 by not delivering the 2024 Produced Seed to the elevator in the name of Plaintiff after receiving the release notice from Plaintiff. See Exhibit B of Agreement 44, ¶ 4, 6(d).

223.     Although Plaintiff has demanded information and records regarding the 2024 Produced Seed relating to Agreement 44, including without limitation in correspondence dated September 9, 2024 (Exhibit 10), September 27, 2024 (Exhibit 11), April 17, 2025 (Exhibit 12), April 25, 2025 (Exhibit 13) and May 23, 2025 (Exhibit 14), Defendants have not provided the requested information.

224.     Although Plaintiff provided written notice of breach to Defendants, Defendants have failed to cure these breaches.

225.     Upon information and belief, Defendants (a) sold or transferred the 2024 Produced Seed relating to Agreement 44 and (b) received proceeds from such sale/transfer and/or a benefit from the proceeds, all in breach of Agreement 44.

226.    Based on post-harvest estimates, the yield from the crops grown pursuant to Agreement 44 resulted in a harvest of 7,392.12 bushels.

227.    The 12,813 bushel estimate, reflecting the combined harvest under Agreements 43 and 44, was communicated to Defendants in correspondence dated April 17, 2025 (Exhibit 12), which Defendants have not disputed.

228.    The Contract Price for Produced Seed subject to Agreement 44, which reflects an approximate average of the market rates of local elevators, is $10.65 per bushel.

229.    Therefore, Plaintiff estimates that the 2024 Produced Seed subject to Agreement 44 had a value of no less than approximately $78,726.08.

230.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered monetary damages in the form of lost revenue of no less than $78,726.08.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in Plaintiff's favor on Count VI of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to exceed $75,000 in total but not less than $78,726.08; plus interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

## COUNT VII – BREACH OF CONTRACT FOR DAMAGES
### (All Defendants)

231.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 230 of this Complaint as if fully set forth herein.

232.    Agreement 45 is attached to this Complaint as Exhibit 7. See Exhibit 7 (Agreement No. 4600026745).

233.    Agreement 45 pertains to Soybean Parent Seed being planted on a field of approximately 160 acres during the 2024 growing season. Id. (cover page).

234.    The Parties entered into Agreement 45. See Exhibit 7.

235.    Agreement 45 is a valid and binding contract.

236.    Plaintiff fully performed its obligations under Agreement 45, including and without limitation, by providing Defendants with Parent Seed and specifying the time and place for delivery of the 2024 Produced Seed.

237.    Defendants breached Agreement 45 by not delivering the 2024 Produced Seed to the elevator in the name of Plaintiff after receiving the release notice from Plaintiff. See Exhibit B of Agreement 45, ¶ 4, 6(d).

238.    Although Plaintiff has demanded information and records regarding the 2024 Produced Seed relating to Agreement 45, including without limitation in correspondence dated September 9, 2024 (Exhibit 10), September 27, 2024 (Exhibit 11), April 17, 2025 (Exhibit 12), April 25, 2025 (Exhibit 13) and May 23, 2025 (Exhibit 14), Defendants have not provided the requested information.

239.    Although Plaintiff provided written notice of breach to Defendants, Defendants have failed to cure these breaches.

240.    Upon information and belief, Defendants (a) sold or transferred the 2024 Produced Seed relating to Agreement 45 and (b) received proceeds from such sale/transfer and/or a benefit from the proceeds, all in breach of Agreement 45.

241.    Based on post-harvest estimates, the yield from the crops grown pursuant to Agreement 45 resulted in a harvest of 9,728.30 bushels.

242.    The 13,958 bushel estimate, reflecting the combined harvest under Agreements 45 and 86, was communicated was communicated to Defendants in correspondence dated April 17, 2025 (Exhibit 12), which Defendants have not disputed.

243.    The Contract Price for Produced Seed subject to Agreement 45, which reflects an approximate average of the market rates of local elevators, is $10.65 per bushel.

244.    Therefore, Plaintiff estimates that the 2024 Produced Seed subject to Agreement 45 had a value of no less than approximately $103,606.40.

245.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered monetary damages in the form of lost revenue of no less than $103,606.40.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in Plaintiff's favor on Count VII of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to exceed $75,000 but not less than $103,606.40; plus interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

## COUNT VIII – BREACH OF CONTRACT FOR DAMAGES
### (All Defendants)

246.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 245 of this Complaint as if fully set forth herein.

247.    Agreement 46 is attached to this Complaint as Exhibit 8. See Exhibit 8 (Agreement No. 4600026746).

248.    Agreement 46 pertains to Soybean Parent Seed being planted on a field of approximately 50 acres during the 2024 growing season. Id. (cover page).

249.    The Parties entered into Agreement 46. See Exhibit 8.

250.    Agreement 46 is a valid and binding contract.

251.    Plaintiff fully performed its obligations under Agreement 46, including and without limitation, by providing Defendants with Parent Seed and specifying the time and place for delivery of the 2024 Produced Seed.

252.    Defendants breached Agreement 46 by not delivering the 2024 Produced Seed to the elevator in the name of Plaintiff after receiving the release notice from Plaintiff. See Exhibit B of Agreement 46, ¶ 4, 6(d).

253.    Although Plaintiff has demanded information and records regarding the 2024 Produced Seed relating to Agreement 46, including without limitation in correspondence dated September 9, 2024 (Exhibit 10), September 27, 2024 (Exhibit 11), April 17, 2025 (Exhibit 12), April 25, 2025 (Exhibit 13) and May 23, 2025 (Exhibit 14), Defendants have not provided the requested information.

254.    Although Bayer provided written notice of breach to Defendants, Defendants have failed to cure these breaches.

255.    Upon information and belief, Defendants (a) sold or transferred the 2024 Produced Seed relating to Agreement 46 and (b) received proceeds from such sale/transfer and/or a benefit from the proceeds, all in breach of Agreement 46.

256.    Based on post-harvest estimates, the yield from the crops grown pursuant to Agreement 46 resulted in a harvest of 3,773 bushels.

257.    The 3,773 bushel estimate was communicated to Defendants in correspondence dated April 17, 2025 (Exhibit 12), which Defendants have not disputed.

258.    The Contract Price for Produced Seed subject to Agreement 46, which reflects an approximate average of the market rates of local elevators, is $10.65 per bushel.

259.    Therefore, Plaintiff estimates that the 2024 Produced Seed subject to Agreement 46 had a value of no less than approximately $40,182.45.

260.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered monetary damages in the form of lost revenue of no less than $40,182.45.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in Plaintiff's favor on Count VIII of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to be not less than $40,182.45; plus interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

### COUNT IX – BREACH OF CONTRACT FOR DAMAGES
#### (Defendants Wade and Nathan Schmidgall)

261.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 260 of this Complaint as if fully set forth herein.

262.    Agreement 86 is attached to the Complaint as Exhibit 9. See Exhibit 9 (Agreement No. 4600026886).

263.    Agreement 86 pertains to Soybean Parent Seed being planted on a field of approximately 90 acres during the 2024 growing season. Id. (cover page).

264.    The Parties entered into Agreement 86. See Exhibit 9.

265.    Agreement 86 is a valid and binding contract.

266.    Plaintiff fully performed its obligations under Agreement 86, including and without limitation, by providing Defendants Wade and Nathan Schmidgall with Parent Seed and specifying the time and place for delivery of the 2024 Produced Seed.

267.    Defendants breached Agreement 86 by not delivering the 2024 Produced Seed to the elevator in the name of Plaintiff after receiving the release notice from Plaintiff. See Exhibit B of Agreement 86, ¶ 4, 6(d).

268.    Although Plaintiff has demanded information and records regarding the 2024 Produced Seed relating to Agreement 86, including without limitation in correspondence dated September 9, 2024 (Exhibit 10), September 27, 2024 (Exhibit 11), April 17, 2025 (Exhibit 12),

April 25, 2025 (Exhibit 13) and May 23, 2025 (Exhibit 14), Defendants Wade and Nathan Schmidgall have not provided the requested information.

269.   Upon information and belief, Defendants Wade and Nathan Schmidgall (a) sold or transferred the 2024 Produced Seed relating to Agreement 86 and (b) received proceeds from such sale/transfer and/or a benefit from the proceeds, all in breach of Agreement 86.

270.   Based on post-harvest estimates, the yield from the crops grown pursuant to Agreement 86 resulted in a harvest of 4,229.7 bushels.

271.   The 4,229 bushel estimate (rounded from 4,229.7) was communicated to Defendants Wade and Nathan Schmidgall in correspondence dated April 17, 2025 (Exhibit 12), which Defendants Wade and Nathan Schmidgall have not disputed.

272.   The Contract Price for Produced Seed subject to Agreement 86, which reflects an approximate average of the market rates of local elevators, is $10.65 per bushel.

273.   Therefore, Plaintiff estimates that the 2024 Produced Seed subject to Agreement 86 had a value of no less than approximately $45,046.31.

274.   As a direct and proximate result of Defendants' breaches, Plaintiff has suffered monetary damages in the form of lost revenue of no less than $45,046.31.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in Plaintiff's favor on Count IX of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to be not less than $45,046.31; plus interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

## COUNT X– BREACH OF CONTRACT – SPECIFIC PERFORMANCE
### (All Defendants)

275.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 274 of this Complaint as if fully set forth herein.

276.    Agreements 42, 43, 44, 45, and 46 are valid and binding contracts.

277.    Plaintiff fully performed its obligations under Agreements 42, 43, 44, 45, and 46, including and without limitation, providing Defendants with Parent Seed in 2024.

278.    Paragraph Seven of Exhibit B of the Agreements continues, stating as follows:

> Additionally, Grower consents to Bayer review and audit of Grower's Farm Service Agency crop reporting information, including without limitation Forms 578 and corresponding aerial photographs, Risk Management Agency claim documentation, dealer/retailer invoices for seed and chemical transactions, and records for the sale or transfer of soybeans for the current and prior crop years. Grower agrees to cooperate in the resolution of any audit discrepancies.

Agreements (Exhibit B to Exs. 1 through 9).

279.    Paragraph Eight of Exhibit B of the Agreements provides: "**Climate FieldView™ Plus Subscription.** Prior to planting, Grower shall acquire a subscription to Climate FieldView™ Plus and shall maintain such subscription at least until all Produced Seed is harvested. Grower shall collect soybean production information from the Contract Acreage and share such information with Bayer. Grower shall ensure Bayer has access to planting and harvest data from the Contract Acreage or shall upload such data via the Climate data inbox within 7 calendar days of planting and harvesting each field."

280.    Defendants breached Agreements 42, 43, 44, 45, and 46 by not providing Plaintiff with information regarding the planting dates, planted acres, and pesticide applications for the Parent Seed delivered to Defendants in 2024 through the Climate FieldView Plus program.

281.    Defendants know how to properly use the Climate FieldView Plus program as they used it in 2023.

282.    Defendants have breached their obligation to collect soybean production information from the Contract Acreage and share such information with Plaintiff. See Exhibit B of Agreements, ¶ 8.

283.    Plaintiff owned and retained title to the Produced Seed.

284.    Although Plaintiff has provided written notice of breach to Defendants, including without limitation, Exhibits 10 through 15, Defendants have failed to cure the breach.

285.    Although Plaintiff has demanded information regarding the 2024 Parent Seed and Produced Seed, including without limitation, Exhibits 10 through 15, Defendants have not provided it.

286.    Although Plaintiff is contractually entitled to the information regarding the 2023 and 2024 growing seasons, Defendants have not provided the requested information.

287.    Upon information and belief, Defendants planted the 2024 Parent Seed.

288.    Paragraph Three of the Terms and Conditions of the Agreements provides: "**Remedies**. In the event Grower fails to transfer the Produced Seed to Bayer according to the terms of this Agreement, Grower shall provide the following remedies, at Bayer's election: **specific performance and replevin**." Agreements, Terms and Conditions, ¶ 3 (Exhibits 1 through 9) (emphasis added).

289.    As a direct and proximate result of Defendants' breaches, Plaintiff has been injured.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in Plaintiff's favor on Count X of this Complaint and:

a.    Order Defendants to surrender any of Plaintiff's Parent and/or Produced Seed in their possession, custody, or control to Plaintiff;

b.  Order Defendants to provide Plaintiff all records reflecting or regarding the planting, growth, and harvesting of Plaintiff's Parent and/or Produced Seed in Defendants' possession, custody, or control, including without limitation, the information and records referenced in paragraphs 1, 7 and 8 of Exhibit B to the Agreements.

c.  For such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

## COUNT XI – BREACH OF CONTRACT – SPECIFIC PERFORMANCE
### (Defendants Wade and Nathan Schmidgall)

290.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 289 of this Complaint as if fully set forth herein.

291.    Agreement 86 is a valid and binding contract.

292.    Plaintiff fully performed its obligations under Agreement 86, including and without limitation, by providing Defendants Wade and Nathan Schmidgall with Parent Seed in 2024.

293.    Paragraph Seven of Exhibit B of the Agreements continues, stating as follows:

Additionally, Grower consents to Bayer review and audit of Grower's Farm Service Agency crop reporting information, including without limitation Forms 578 and corresponding aerial photographs, Risk Management Agency claim documentation, dealer/retailer invoices for seed and chemical transactions, and records for the sale or transfer of soybeans for the current and prior crop years. Grower agrees to cooperate in the resolution of any audit discrepancies.

Agreements (Exhibit B to Exs. 1 through 9).

294.    Paragraph Eight of Exhibit B of Agreement 86 provides: "**Climate FieldView™ Plus Subscription.** Prior to planting, Grower shall acquire a subscription to Climate FieldView™ Plus and shall maintain such subscription at least until all Produced Seed is harvested. Grower shall collect soybean production information from the Contract Acreage and share such information with Bayer. Grower shall ensure Bayer has access to planting and harvest data from

45

the Contract Acreage or shall upload such data via the Climate data inbox within 7 calendar days of planting and harvesting each field."

295.    Defendants Wade and Nathan Schmidgall breached Agreement 86 by not providing Plaintiff with information regarding the planting dates, planted acres, and pesticide applications for the Parent Seed delivered to these Defendants in 2024 through the Climate FieldView Plus program.

296.    Defendants Wade and Nathan Schmidgall know how to properly use the Climate FieldView Plus program as they used it in 2023.

297.    Defendants Wade and Nathan Schmidgall have breached their obligation to collect soybean production information from the Contract Acreage and share such information with Plaintiff. See Exhibit B of Agreement 86, ¶ 8.

298.    Plaintiff owned and retained title to the Produced Seed.

299.    Although Plaintiff has provided written notice of breach to Defendants Wade and Nathan Schmidgall, including without limitation, Exhibits 10 through 15, they have failed to cure the breach.

300.    Although Plaintiff has demanded information regarding the 2024 Parent Seed and Produced Seed, including without limitation, Exhibits 10 through 15, Defendants Wade and Nathan Schmidgall have not provided it.

301.    Although Plaintiff is contractually entitled to the information regarding the 2023 and 2024 growing seasons, Defendants have not provided the requested information.

302.    Upon information and belief, Defendants Wade and Nathan Schmidgall planted the 2024 Parent Seed.

303.    Paragraph Three of the Terms and Conditions of Agreement 86 provides: "**<u>Remedies</u>**. In the event Grower fails to transfer the Produced Seed to Bayer according to the terms of this Agreement, Grower shall provide the following remedies, at Bayer's election: **<u>specific performance and replevin</u>**." Agreements, Terms and Conditions, ¶ 3 (Exhibits 1 through 9) (emphasis added).

304.    As a direct and proximate result of Defendants Wade and Nathan Schmidgall's breaches, Plaintiff has been injured.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants Wade and Nathan Schmidgall and in Plaintiff's favor on Count XI of this Complaint and:

a.  Order Defendants Wade and Nathan Schmidgall to surrender any of Plaintiff's Parent and/or Produced Seed in their possession, custody, or control to Plaintiff;

b.  Order Defendants Wade and Nathan Schmidgall to provide Plaintiff all records reflecting or regarding the planting, growth, and harvesting of Plaintiff's Parent and/or Produced Seed in Defendants' possession, custody, or control including without limitation, the information and records referenced in paragraphs 1, 7 and 8 of Exhibit B to the Agreements.

c.  For such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

### <u>COUNT XII – UNJUST ENRICHMENT</u>
**(All Defendants)**

305.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 304 of this Complaint as if fully set forth herein.

306.    Plaintiff provided goods of real and substantial value to Defendants, namely:

    a.   High quality Parent Seed for planting in the 2023 and 2024 growing seasons, which is valued at $46,105.41;

    b.   Parent Seed Treatments that Plaintiff provided in 2023 and 2024, which is valued at $9,651.40;

    c.   The Produced Seed harvested in 2023 and 2024, which has a grain commodity value of $800,396.16;

    d.   Payment of 80% of the Contract Price for 2023 Produced Seed, which amounted to $190,328.84;

    e.   Premium Payments based on the high quality of the 2023 Produced Seed, which amounted to $26,642.40; and

    f.   Parent Seed box containers which the 2024 Parent Seed was stored in for delivery to Defendants and that Defendants improperly retained, valued at $15,224.00.

307.    Plaintiff owned and retained title to the Parent Seed, the resultant soybean crops, and Produced Seed harvested from it.

308.    Defendants have retained the Produced Seed for themselves and/or sold/transferred the Produced Seed in their own name and pocketed the proceeds or otherwise benefited.

309.    Defendants were unjustly enriched by the Produced Seed retained, transferred and/or sold.

310.    Defendants have planted, cultivated, and retained the benefit of the treated Parent Seed which Plaintiff conferred to Defendants only on the basis that the harvest would be delivered to Plaintiff or sold in its name.

311.    Defendants were unjustly enriched by the treated Parent Seed retained, planted, and cultivated.

312.    Defendants have retained or otherwise benefited from the Contract and Premium Payments which Plaintiff remitted to Defendants only on the basis that Produced Seed would be delivered to Plaintiff or sold in its name.

313.    Defendants were unjustly enriched by the Contract and Premium Payments.

314.    Defendants have retained or otherwise benefited from the Parent Seed box containers which were used to deliver the Parent Seed to Defendants only on the basis that they would be returned to Plaintiff.

315.    Defendants were unjustly enriched by the Parent Seed box containers retained and/or transferred/sold.

316.    Defendants were unjustly enriched at the expense of Plaintiff.

317.    Defendants unjustly obtained benefits at the expense of Plaintiff.

318.    Plaintiff has been damaged, and continues to incur damages, as a result of Defendants' unjust conduct.

319.    Defendants' retention, transfer and/or sale of the benefits obtained at Plaintiff's expense is inequitable and unjust.

320.    As a result of the unjust benefit rendered to Defendants, Plaintiff has been damaged in an amount approximately $1,088,348.21, with the actual amount to be quantified at trial.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants in proportion to each Defendants' respective liability and in Plaintiff's favor on Count XII of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to exceed $75,000 but not be less than $1,088,348.21; plus interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

## COUNT XIII – CONVERSION
### (All Defendants)

321.     Plaintiff expressly incorporates the allegations in paragraphs 1 through 320 of this Complaint as if fully set forth herein.

322.     Plaintiff provided Parent Seed to Defendants for Defendants to grow into Produced Seeds.

323.     Plaintiff owns and retains title to the Produced Seed. See Agreements, Terms and Conditions, ¶ 1(a) ("Grower shall hold the Parent Seed, the plants grown from it and all Produced Seed as bailee only, and all rights of ownership in them shall remain in Bayer at all times.").

324.     Plaintiff instructed Defendants to deliver the Produced Seed to an elevator and sell the 2023 Produced Seed in Plaintiff's name after the notices were released on February 26, 2024.

325.     Plaintiff instructed Defendants to deliver the Produced Seed to an elevator and sell the 2024 Produced Seed in Plaintiff's name after the notices were released on January 23, 2025 and May 30, 2025.

326.     Defendants did not deliver the Produced Seed to an elevator and/or sell the Produced Seed in Plaintiff's name.

327.     By retaining, transferring and/or selling the Produced Seed in a name other than Plaintiff's, Defendants have taken Plaintiff's property with the intent to deprive Plaintiff of its property, contrary to Plaintiff's right of ownership and possession.

328.     Defendants' wrongful conversion of the Produced Seed has damaged Plaintiff in an estimated amount of $800,396.16, plus applicable interest, with the actual amount to be quantified at trial.

329.    Plaintiff supplied Parent Seed box containers in which the 2024 Parent Seed was delivered to Defendants, which were to be returned to Plaintiff once no longer needed to store the Parent Seed.

330.    Plaintiff owns and retains title to the 2024 Parent Seed box containers.

331.    Plaintiff is entitled to possession of the 2024 Parent Seed box containers.

332.    Defendants were aware of their obligation to return the 2024 Parent Seed box containers to Plaintiff, as evidenced by their having timely returned the 2023 Parent Seed box containers.

333.    Defendants failed to return the 2024 Parent Seed box containers to Plaintiff.

334.    By instead retaining and/or transferring or selling the 2024 Parent Seed box contains, Defendants have taken Plaintiff's property with the intent to deprive Plaintiff of its property, contrary to Plaintiff's right of ownership and possession.

335.    Defendants' wrongful conversion of the 2024 Parent Seed box containers has damaged Plaintiff in an estimated amount of $15,224.00, plus applicable interest, with the actual amount to be quantified at trial.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in Plaintiff's favor on Count XIII of this Complaint and award Plaintiff actual damages that will be proven at trial, but which are reasonably believed to exceed $75,000 and be not less than $815,620.16; plus interest, costs, and fees incurred in bringing this action; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

### COUNT XIV – REPLEVIN
### (All Defendants)

336.    Plaintiff expressly incorporates the allegations in paragraphs 1 through 335 of this Complaint as if fully set forth herein.

337.    Plaintiff provided Parent Seed to Defendants for Defendants to grow into Produced Seeds.

338.    Plaintiff owns and retains title to the Produced Seed. <u>See</u> Agreements, Terms and Conditions, ¶ 1(a) ("Grower shall hold the Parent Seed, the plants grown from it and all Produced Seed as bailee only, and all rights of ownership in them shall remain in Bayer at all times.").

339.    Defendants have breached the Agreements by not delivering the 2023 and 2024 Produced Seed to an elevator in Plaintiff's name and by not providing Plaintiff information and records regarding the 2024 Parent Seed and Produced Seed.

340.    Paragraph Three of the Terms and Conditions of the Agreements provides: "**<u>Remedies</u>**. In the event Grower fails to transfer the Produced Seed to Bayer according to the terms of this Agreement, Grower shall provide the following remedies, at Bayer's election: **<u>specific performance and replevin</u>**." Agreements, Terms and Conditions, ¶ 3 (Exhibits 1 through 9) (emphasis added).

341.    Based on Defendants' failure to (a) remit the 2023 and 2024 Produced Seed to the elevator in the name of Plaintiff, (b) tender proceeds from the sale of the Produced Seed for non-seed use to Plaintiff, and (c) materially respond to Plaintiff's communications regarding the Agreements, the Parent Seed, and the Produced Seed, Plaintiff is understandably concerned regarding, <u>inter alia</u>, Defendants' use of the Parent Seed and disposition of the Produced Seed.

342.    Plaintiff believes that Plaintiff will be in danger of losing the Produced Seed, Plaintiff's property, unless it be taken out of the possession of Defendants, or otherwise secured.

343.    To Plaintiff's knowledge and belief, the Produced Seed has not been seized by legal process.

344.     Plaintiff instructed Defendants to deliver the Produced Seed from the 2023 growing season to an elevator in the name of and for the benefit of Plaintiff.

345.     Plaintiff instructed Defendants to deliver the Produced Seed from the 2024 growing season to an elevator in the name of and for the benefit of Plaintiff.

346.     More than thirty-days has passed since Plaintiff released the Produced Seed and directed Defendants to deliver the Produced Seed to the elevator as instructed after the 2023 and 2024 notices were issued.

347.     Defendants have ceased all communications with Plaintiff.

348.     Defendants' failure to deliver the 2023 and 2024 Produced Seed evidences an intent to retain possession of Plaintiff's property with the intent to control it and without Plaintiff's consent.

349.     To the extent any Parent Seed or Produced Seed remains in Defendants' possession, custody, or control, Plaintiff should be allowed to retrieve its property.

350.     Plaintiff will file an affidavit pursuant to Missouri Revised Statutes Section 533.010.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in Plaintiff's favor on Count XIV of this Complaint and issue a writ of replevin allowing Plaintiff to recover its Parent and/or Produced Seed in Defendants' possession, custody, or control; and for such other and further relief to Plaintiff as the Court deems just and proper under the circumstances.

## FURTHER RELIEF SOUGHT

WHEREFORE, based on the foregoing, Plaintiff Bayer Production Supply LLC respectfully requests that the Court enter a judgment in its favor and grant it the following relief:

A.      Award Plaintiff an amount no less than $1,088,348.21, with the exact amount to be determined at trial, including, without limitation, for Defendants' breaches of contract;

B.      Entry of judgment for damages, together with interest and costs, to compensate Plaintiff for Defendants' conversion of its property;

C.      Entry of judgment for damages, together with interest and costs to compensate Plaintiff for Defendants' unjust enrichment and to disgorge Defendants from the benefit they received from the improper taking, selling, and use of Plaintiff's seed, the proceeds and profits of which, in equity and good conscience, belong to Plaintiff;

D.      Entry of a preliminary and permanent injunction against Defendants:

    i.      Enjoining them from making, using, saving, cleaning, planting, selling, offering to sell or otherwise transferring, any of Plaintiff's patented or proprietary seed technologies, without prospective express written permission from Plaintiff;

    ii.     Enjoining Defendants from selling, destroying, tampering, using, pledging, encumbering, removing, transferring, or otherwise disposing of any soybean or other seed containing patented biotechnologies owned by Plaintiff or its affiliates (including Parent or Produced Seed) without Plaintiff's prospective express written permission;

    iii.    Enjoining Defendants from destroying or disposing of business records of Defendants or any related entity that relate to the Agreements, the Parent

Seed, the Produced Seed, and/or Defendants' farming operations from January 1, 2020 to present;

    iv.    Enjoining Defendants from restricting, limiting, or conditioning either the access of Plaintiff to the Parent and Produced Seed, or Plaintiff's ability to take possession of the Parent and Produced Seed;

    v.    Requiring Defendants to surrender Plaintiff's Parent and/or Produced Seed in their possession, custody, or control to Plaintiff and take all actions necessary to allow Plaintiff to obtain access to and possession of Plaintiff's Parent and/or Produced Seed; and

    vi.    Requiring Defendants to further provide Plaintiff all records reflecting or regarding the planting, growth, and harvesting of Plaintiff's Parent and/or Produced Seed in Defendants' possession, custody, or control.

E.    Entry of judgment for costs, expenses, and reasonable attorneys' fees incurred by Plaintiff;

F.    Entry of a writ of replevin allowing Plaintiff to recover its patented Parent or Produced seed in Defendants' possession, custody, or control;

G.    For post award interest at the rate allowed by law from the date the judgment is entered until all outstanding amounts are paid in full; and

H.    For such other and further relief as the Court deems just.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Respectfully submitted,

HUSCH BLACKWELL LLP

By: */s/ Glennon P. Fogarty*
Glennon P. Fogarty, MO Bar No. 42983
Alexandra. E. Schnarre, MO Bar No. 74826
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
(314) 480-1500
(314) 480-1505 Fax
*Glennon.Fogarty@huschblackwell.com*
*Alex.schnarre@huschblackwell.com*

Michael D. Fielding, Mo Bar No. 53124
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000
(816) 983-8080 Fax
*Michael.Fielding@huschblackwell.com*

***Attorneys for Plaintiff Bayer Production Supply LLC***

EXHIBIT LIST TO

PLAINTIFF BAYER PRODUCTION SUPPLY LLC'S COMPLAINT

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| BAYER PRODUCTION SUPPLY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:25-cv-1199 |
| | ) | |
| WADE SCHMIDGALL, | ) | |
| LEE SCHMIDGALL, AND | ) | |
| NATHAN SCHMIDGALL, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT LIST TO PLAINTIFF BAYER PRODUCTION SUPPLY LLC'S COMPLAINT**

**Exhibit 1**    Contract 4600017801 (Production "Agreement 01") *[Redacted]*

**Exhibit 2**    Contract 4600017802 (Production "Agreement 02") *[Redacted]*

**Exhibit 3**    Contract 4600018588 (Production "Agreement 88") *[Redacted]*

**Exhibit 4**    Contract 4600026742 (Production "Agreement 42") *[Redacted]*

**Exhibit 5**    Contract 4600026743 (Production "Agreement 43") *[Redacted]*

**Exhibit 6**    Contract 4600026744 (Production "Agreement 44") *[Redacted]*

**Exhibit 7**    Contract 4600026745 (Production "Agreement 45") *[Redacted]*

**Exhibit 8**    Contract 4600026746 (Production "Agreement 46") *[Redacted]*

**Exhibit 9**    Contract 4600026886 (Production "Agreement 86") *[Redacted]*

**Exhibit 10**    September 9, 2024 correspondence from Plaintiff to Defendants providing notice of breaches of the Agreements and requesting information as to the 2023 and 2024 Produced Seed

**Exhibit 11**    September 27, 2024 correspondence from Plaintiff to Defendants demanding information and records regarding (a) the Produced Seed from the 2023 soybean crop and (b) the soybean plants currently grown and/or then growing from Parent Seed and all Produced Seed from the 2024 crop

**Exhibit 12**   April 17, 2025 correspondence from Plaintiff to Defendants informing Defendants that over 30 days had passed since the original release date for the 2024 growing season, and the 2024 Produced Seed had not been delivered to the elevator, in violation of the Agreements for the 2024 growing season

**Exhibit 13**   April 25, 2025 correspondence from Plaintiff to Defendants reiterating that Plaintiff had not received the 2024 Seed and reminding Defendant Wade that Defendants are contractually required to and needed to submit confirmed production acreage and information in order for Plaintiff to process any eligible payments

**Exhibit 14**   May 23, 2025 correspondence from counsel for Plaintiff Bayer Production to Defendants, providing Defendants additional notice of their breaches of their Agreements and requesting information regarding the 2023 and 2024 Parent Seed and 2023 and 2024 Produced Seed

**Exhibit 15**   May 30, 2025 correspondence from Plaintiff confirming the original contractual bushel estimates of Produced Seed from the growing season